Robert D. BENSON, Plaintiff–Appellant,

v.

NORTHWEST AIRLINES, INC., Karen Pierce; Harvey Armstrong, Defendants–Appellees.

No. 94–2824.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995.

Decided Aug. 15, 1995.

Thomas E. Marshall, Minneapolis, MN, for appellant.

Carol A. Peterson, Minneapolis, MN (David C. Lundsgaard on the brief), for appellees.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

JOHN R. GIBSON, Senior Circuit Judge.

Robert D. Benson appeals from the district court's entry of summary judgment in favor of Northwest Airlines, Inc., on his claim under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101–12213 (Supp. V 1993). The district court concluded that Benson was not a "qualified individual with a disability," dismissed his ADA claim, and remanded his remaining claims to state court. In so doing, the district court failed to apply the burden-shifting scheme appropriate to discrimination cases. We reverse and remand.

In 1986, Northwest Airlines hired Benson as a mechanic. In 1988, Benson began working as an engineer in Northwest's Technical Operations Department designing products and tools. He was promoted to Senior Engineer effective January 1, 1991. He again became a mechanic for Northwest in March 1992 and was assigned to recondition aircraft.

In October 1992, Benson was replacing the insulation in the lower cargo bay of a DC–10, a job which required that he lie on the floor and repeatedly push insulation behind him. Benson suffered severe chest pains and was taken to the hospital. Doctors determined that he had experienced a relapse of brachial plexopathy, also known as Parsonage–Turner syndrome, a rare neurological disorder which can cause pain, weakness or numbness in the arm and shoulder. This had been minimally asymptomatic until that time. In November of 1992, Benson returned to work and transferred to the Recycling Unit, where employees with work-related injuries worked until able to return to their former positions or find alternative positions.

In a letter dated December 7, 1992, Benson's doctor advised Northwest of Benson's medical condition. The doctor recommended that Benson never again engage in work that involved extensive use of his left arm or repetitive motion of his left shoulder because he would likely "suffer further relapses and require extensive periods on disability." The doctor stated that, "[i]n particular, [Benson's] previous job as a mechanic, would be totally inappropriate for his condition."

In December of 1993, a more senior employee "bumped" Benson from Recycling, and Benson became a plant maintenance mechanic. In that position, Benson served as a dispatcher for other mechanics. Four days later, Richard Paxton, the manager of that department, disqualified Benson from the position "due to the medical limitations established by [Benson's] physician." Northwest placed Benson on a 90–day unpaid leave of absence shortly thereafter, and told him to either find another position with Northwest which fell within his physical abilities or face termination, as was company policy. Benson contends that a foreman's position opened up in the Recycling Department, but Paxton refused the transfer. Benson unsuccessfully sought engineering positions, and Northwest

officially terminated his employment on March 16, 1993.

Benson filed a discrimination charge with the Minnesota Department of Human Rights and the EEOC, claiming Northwest discriminated against him because of his disability and failed to reasonably accommodate that disability. He then brought this action in state court, alleging an ADA violation and five state claims. Northwest removed and filed a motion for summary judgment on the basis that Benson was not a "qualified individual with a disability" within the meaning of the ADA, specifically relying on the physician's assessment. The district court granted Northwest's motion on the ADA claim and remanded the state law claims to state court. *Benson v. Northwest Airlines, Inc.,* Civ. No. 3–93–507 (D.Minn. June 27, 1994).

The court first found that Benson indisputably possessed the requisite skill, experience, education, and job-related requirements of a mechanic, but rejected Benson's argument that he was able to perform adequately as a mechanic with accommodation. *Id.* at 15. The district court stated: "The burden of proof rests on the plaintiff to establish that he could perform the essential functions of the position at issue." *Id.* The court further stated: "There is no basis in the record ... to conclude that Benson's ability to work as a dispatcher or as a sorter in the Recycling Unit equates to his ability to perform the essential functions of a mechanic's job." *Id.* The court concluded that Benson's employment in the "temporary" positions failed "to create a genuine issue of material fact as to whether he was a 'qualified individual with a disability.'" *Id.*

The court also held that Benson failed to establish that he possessed the requisite skill, experience, education, and other job-related requirements of the foreman position in the Recycling Unit. *Id.* at 16. "[I]ndeed, the record is bare as to what those prerequisites of the foreman position might be." *Id.* Further, the court stated that Benson did not identify the essential functions of the foreman's position or indicate whether he could perform that job with or without accommodation. The district court concluded that Benson failed to establish that he was a " 'quali-

fied person with a disability' with respect to the Recycling foreman position." *Id.*

The court rejected Benson's argument that Northwest did not reasonably accommodate his disability because a supervisor in the Recycling Unit wanted to create a permanent position for Benson but was unable to get upper management approval. The court stated that "for reassignment to be a 'reasonable accommodation' a position must *exist* and be vacant." *Id.* at 17. Finally, the court held that Benson failed to prove that he was qualified for or could perform the essential functions of the engineering positions. *Id.*

Benson argues that genuine issues of material fact preclude summary judgment and that the district court improperly placed the burden of proof regarding essential functions on Benson. Benson also argues that Northwest could easily accommodate his disability. In an amicus brief, the EEOC supports Benson's argument that the district court erred in assigning the ultimate burden of proof to Benson and improperly granted summary judgment.

## I.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a grant of summary judgment de novo and apply the same standard as did the district court. *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995). We view all evidence in the light most favorable to Benson, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and bear in mind that, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994).

■ Protection under Title I of the ADA extends to "a qualified individual with a disability." 42 U.S.C. § 12112(a). The determination of qualification takes two parts: (1) whether the individual meets the necessary

prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m) (1994); EEOC, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act II–11 to II–13 (1992).

■■■ To obtain relief under the ADA, an aggrieved employee must establish that he has a disability as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that he has suffered adverse employment action because of his disability. *Wooten,* 58 F.3d at 385. The employee at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——–—, 113 S.Ct. 2742, 2747–50, 125 L.Ed.2d 407 (1993) (Title VII case); *White v. York Int'l Corp.,* 45 F.3d 357, 361 (10th Cir.1995) (applying *Hicks* to ADA case). However, once the plaintiff makes "a facial showing that reasonable accommodation is possible," the burden of *production* shifts to the employer to show that it is unable to accommodate the employee.[1] *Mason v. Frank,* 32 F.3d 315, 318–19 (8th Cir.1994) (affirming judgment entered in favor of employer under Rehabilitation Act); *Arneson v. Heckler,* 879 F.2d 393, 396 (8th Cir.1989) (reversing the dismissal of a claim under the Rehabilitation Act).[2] *See Hicks,* —— U.S. at ——, 113 S.Ct. at 2747. If the employer shows that the employee cannot perform the essential functions of the job even with reasonable accommodation, the employee must rebut that showing with evidence of his individual capa-

bilities. *See Mason,* 32 F.3d at 319. At that point, the employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981) (Title VII case) *quoted in Hicks,* —— U.S. at ——, 113 S.Ct. at 2752.

## II.

Applying these principles, we conclude that summary judgment is inappropriate. Material issues of fact remain as to what the essential functions of the positions are, whether Benson can perform them, and, if not, whether a reasonable accommodation by Northwest would enable him to do so.

Northwest does not dispute the existence of Benson's disability or that his disability precipitated his termination. The only issue before us is whether Benson made a facial showing that reasonable accommodation was possible. On the record before us, we conclude that Benson met his threshold burden with respect to two proposed accommodations: (1) restructuring the mechanic's position to permit Benson to perform the essential functions of that job; and (2) providing reassignment or transfer to a position other than a mechanic's position.

### A.

■■■ Job restructuring is a possible accommodation under the ADA. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii) (1994). Restructuring frequently involves reallocating the marginal functions of a job. EEOC, Technical Assistance Manual at III–21. An employer need not reallocate the essential functions of a job, which a qualified

---

1. The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to" various employment practices, including discharge. 42 U.S.C. § 12112(a). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on

the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

2. Because the ADA specifically mandates that its provisions be interpreted in a manner that "prevents imposition of inconsistent or conflicting standards for the same requirements under [the ADA] and the Rehabilitation Act of 1973," 42 U.S.C. § 12117(b), cases interpreting either are relevant to our analysis. *Wooten,* 58 F.3d at 385 n. 2.

individual *must* perform. *Hall v. United States Postal Service,* 857 F.2d 1073, 1080 (6th Cir.1988); EEOC, Technical Assistance Manual at III–21. Benson has produced evidence that he can perform many of the tasks assigned to a mechanic despite his disability. For example, he was working as a "mechanic" when disqualified. The critical question is whether Benson can perform "the essential functions" of that position. *See* 42 U.S.C. § 12111(8).

Because Northwest disputes Benson's evidence that he can perform the essential functions of the mechanic's job, it must put on some evidence of those essential functions.[3] *See White,* 45 F.3d at 362 (analyzing evidence offered by employer to determine essential functions even before employee demonstrated possible accommodations). Although Benson retains the ultimate burden of persuading the trier of fact that he can perform the essential functions of the job, with or without accommodation, much of the information which determines those essential functions lies uniquely with the employer. For example, the ADA and its implementing regulations direct us to consider, among other things, the following: "the employer's judgment as to what functions of a job are essential," 42 U.S.C. § 12111(8); job descriptions prepared before advertising or interviewing applicants, *id.;* "[t]he consequences of not requiring the [employee] to perform the function," 29 C.F.R. § 1630.2(n)(3)(iv) (1994); and the work experience of current and former employees. 29 C.F.R. § 1630.2(n)(3)(vi), (vii) (1994). *See Americans with Disabilities: Practice and Compliance Manual* § 7:42 (George L. Bounds et al., eds., 1995) ("Inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential.")

Northwest contends that it needn't show the essential functions of the mechanic position because it "did not move for summary judgment on the issue of whether Benson could physically perform the essential functions of the mechanic's position, but on the threshold issue of whether the categorical opinion of Benson's own doctor and his concurrence in that opinion meant that Benson had not satisfied his initial burden." Northwest Brief at 15–16. Northwest thus argues that the doctor's letter and Benson's agreement are dispositive. However, the cases Northwest relies on for this proposition do not so hold. *See Pesterfield v. Tennessee Valley Auth.,* 941 F.2d 437 (6th Cir.1991); *Cook v. United States Dep't of Labor,* 688 F.2d 669 (9th Cir.1982) (per curiam), *cert. denied,* 464 U.S. 832, 104 S.Ct. 112, 78 L.Ed.2d 113 (1983). In those cases, the courts held that the doctors' opinions, in combination with other factors, removed any possibility of reasonable accommodation. *See Pesterfield,* 941 F.2d at 441–42 (holding that, following bench trial, trial court did not clearly err in concluding that reasonable accommodation was impossible where the employee's private physician stated that the employee could not tolerate "even the slightest hint of rejection or criticism" and the job required working with others); *Cook,* 688 F.2d at 670–71 (holding discharge justified where employee told city physician that his private physician said he might have angina; city physician recommended transfer to less stressful position; and employee refused transfer but conceded that, if he had angina, he could not perform in current position).

Here, even were the doctor's letter dispositive, viewing the evidence in the light most favorable to Benson, we cannot conclude that Northwest is entitled to summary judgment based solely on Benson's doctor's letter and Benson's "concurrence" in it. The letter stated that "[Benson's] *previous* job as a mechanic" was inappropriate. (Emphasis added.) Benson's agreement with the stated diagnosis could reasonably be interpreted to relate only to his *previous* job of stuffing insulation into aircraft.

At the least, Benson has made a facial showing that the job he performed as a plant maintenance mechanic carried different

---

**3.** This burden may vary in a disability discrimination case which does not involve the issue of reasonable accommodation.

physical qualifications than the mechanic's job at which he was injured.[4] Without any supporting evidence from Northwest (other than a sketchy job description contained in the collective bargaining agreement), we decline to hold that all mechanics' positions encompass the same essential functions or that Benson could not perform the essential functions of the mechanic's position he held when terminated. *See Hall*, 857 F.2d at 1079 (holding that a determination whether physical qualifications are essential job functions "should be based upon more than statements in a job description and should reflect the actual functioning and circumstances of the particular enterprise involved"); EEOC, Technical Assistance Manual at II–17. The relevant inquiry focuses on the position Benson held when terminated. *See Taylor v. Garrett*, 820 F.Supp. 933, 938 (E.D.Pa.1993) (Rehabilitation Act case). *But see Arneson v. Sullivan*, 946 F.2d 90, 92 (8th Cir.1991) (Rehabilitation Act case accepting as evidence the "basic elements" of the position as it existed at the time of trial).

■ While Northwest need not eliminate an essential job function to accommodate Benson, Northwest has made no showing that it would have to do so. *See Hall*, 857 F.2d at 1080. Moreover, even should Benson prove unable to perform an essential function of the mechanic's job, once he makes a facial showing that other reasonable accommodation is possible, the burden is on Northwest to present evidence that reasonable accommodation is not possible. *Mason*, 32 F.3d at 318–19; *Hall*, 857 F.2d at 1080.

### B.

■ "[R]eassignment to a vacant position" is another possible accommodation under the ADA. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii). Following Northwest's ultimatum, Benson sought transfer or reassignment to at least three vacant positions: two in Engineering and one in Recycling. Benson presented evidence that he performed comparable jobs in Engineering before his transfer to the reconditioning mechanic's job. This creates a fact question of whether Benson was qualified for the Engineering positions for which he applied and whether reassignment there would be a reasonable accommodation.

On the record before us, reassignment to the Recycling Unit might also have been an accommodation available to Benson under the ADA. Benson argues both that Northwest should have created a permanent position for him in the Recycling Unit and that a position became available which he was not allowed to fill.

■ The ADA does not require that Northwest take action inconsistent with the contractual rights of other workers under a collective bargaining agreement, *cf. Woodyard v. Hoover Group, Inc.*, 985 F.2d 421, 424 (8th Cir.1993) (affirming summary judgment which dismissed employee's claim under Nebraska state statute), nor does it require that Northwest create a new position. *See White*, 45 F.3d at 362; *Chiari v. City of League City*, 920 F.2d 311, 318 (5th Cir. 1991). Northwest is not required to create a permanent position as an accommodation, in part, because Benson's permanent assignment to the Recycling Unit might implicate the rights of more senior union members.[5] However, if Northwest had a vacant, existing position for which Benson qualified, Benson's assignment to the position might have been a reasonable accommodation. If the position, as it existed, was both temporary and subject to the terms of the collective bargaining agreement, Benson's occupation of the position would be subject to these limitations as well. *See Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1492 (M.D.Ala.1994); EEOC, Technical Assistance Manual at IX–5.

Benson has created a genuine issue of material fact as to whether Northwest had an existing position available in Recycling. He testified that a position opened up, but

---

4. Northwest states in its brief that it "has undertaken detailed analyses of the essential functions of the mechanic positions," but it has not placed any of these "analyses" in the record before us.

5. When asked at deposition why he left the Recycling job, Benson replied: "There's a bumping process they call it in the union when a person with more seniority is moved out of his slot, he can bump anyone with lesser seniority."

his supervisor would not allow him to take the position. The manager of the Recycling Unit testified that he requested that Benson be transferred there, but also testified that the work he wanted Benson to do was "not really a position. It's this place where we have for sorting hardware." Read in context, however, this discussion appears not to involve the manager's subsequent proposal of a new position for Benson. It is unclear whether an existing position opened up in Recycling which was appropriate to Benson's capabilities. The issue has not been fully developed, and a material fact issue remains.

### III.

As discussed above, Benson made a facial showing that reasonable accommodation was possible. The trial court should then have shifted the burden to Northwest to prove that it was unable to accommodate Benson. *Mason*, 32 F.3d at 318–19. The court did not shift the burden, and Northwest has offered no evidence of the essential functions of the jobs at issue or which of those functions Benson could not perform, with reasonable accommodation. Likewise, Northwest has failed to show that either restructuring or transfer would cause Northwest undue hardship. Although the proposed accommodations may prove unavailable or unreasonable once the circumstances of the case are fleshed out, they have not been, and summary judgment is inappropriate.

### IV.

 Finally, Northwest argues that Benson's ADA claim is preempted by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1988). By bringing a claim under the ADA, however, Benson seeks to enforce a federal statutory right, not a contractual right embodied by the collective bargaining agreement. *See Norman v. Missouri Pac. R.R.*, 414 F.2d 73, 83 (8th Cir.1969). The ADA "provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices" and, thus, is not preempted by the Railway

Labor Act. *See id.* (holding that the Railway Labor Act does not preempt Title VII of the Civil Rights Act).

### V.

We reverse the district court's order dismissing Benson's claim under the ADA and remand for further proceedings consistent with this opinion.[6]

---

6. Neither party appealed the district court's decision to remand Benson's state law claims to state court. Accordingly, we do not address this issue.