# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2699

_____

| | |
|---|---|
| Randall Boersig, | * |
| | * |
| Appellant, | * |
| | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Eastern District of Missouri. |
| Union Electric Company; | * |
| International Brotherhood of Electrical | * |
| Workers, Local 1439, | * |
| | * |
| Appellees. | * |

_____

Submitted:  April 13, 2000
Filed:

_____

Before BOWMAN, MAGILL, and HANSEN, Circuit Judges.

_____

MAGILL, Circuit Judge.

Randall Boersig appeals from the district court's[1] grant of summary judgment in favor of Union Electric Company (Union Electric) and the International Brotherhood of Electrical Workers, Local 1439 (Local 1439), on his claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. For reasons to be discussed,

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

we affirm.

## I.  BACKGROUND

### A.  Randall Boersig's Physical Disabilities and Related Work Restrictions

Boersig, a forty-three year old white male, began working for Union Electric in 1986 as an automotive mechanic helper.  He remained in that position until approximately November 1989, at which time he joined Union Electric's Meter Testing and Installation Department (Meter Division) as a Meter and Installation Helper (Helper).  The Helper job is an entry-level position, and Helpers are the lowest paid workers in the Meter Division.  Understandably, after working for approximately one decade as a Helper, Boersig wanted to move into other higher paying positions within the Meter Division.

Since the mid-1980s, Boersig has been involved in a series of automobile and workplace accidents which have left him with physical impairments affecting both his knees, both his wrists, his right hip and his left shoulder.  He has undergone multiple surgeries to these parts of his body.  Boersig's physical impairments culminated in permanent medical restrictions forbidding the following conduct: 1) kneeling, 2) squatting, and 3) lifting over twenty-five pounds.  In addition to these permanent medical restrictions, the record reveals that Boersig has claimed difficulty climbing ladders and handling tools.  Notwithstanding these medical restrictions, Boersig is able to perform the Helper job functions with accommodations provided by Union Electric.  He uses a stool or sits on the floor to avoid kneeling and squatting, and Union Electric reassigns tasks involving heavy lifting to Boersig's coworkers.

### B.  Union Electric's Promotional System

The Meter Division constitutes a promotional series with the following positions:

1) Meter Helper, 2) Meter Installer, 3) Meter Repairman, 4) Power Meterman, and 5) Meter Standards Tester.   The promotional system at issue in this case is the product of a collective bargaining agreement (CBA) between Union Electric and Local 1439. Under the CBA, when a vacancy occurs within a particular promotional series, it is first offered to members at the next highest level of the promotional series on the basis of their "promotional series seniority."  If no one at that level is interested, the position is similarly offered to members at the next highest level, and so on.[2]  If no employee within the relevant promotional series is qualified or interested, the vacancy is placed on a bid list, copies of which are posted for five working days on bulletin boards accessible to all employees covered by the CBA.  The position is then filled by the bidder with the most seniority, provided that he or she has the ability and qualifications to do the job.

## C.  Boersig Denied Promotion to Meter Installer Because of Disability

Sometime during the first half of 1994, Boersig expressed interest in promotion to the position of Meter Installer (Installer).  In May 1994, when an Installer position became available, Boersig was wearing a leg brace and had just returned from wrist surgery.  Richard Guenther, the superintendent of the Meter Department at that time, knew Boersig was interested, but also knew about Boersig's injuries and was concerned that Boersig would not be able to handle the physical requirements of the Installer job.[3]

---

[2]For example, if a Meter Repairman position becomes available, the CBA requires that it be offered to all Meter Installers on the basis of their promotional series seniority before it is offered to any Helper.

[3]The Meter Installer job involves installing, repairing, and removing residential and commercial electric meters.  An Installer generally works alone, driving between job sites in a company van containing the Installer's tools and a fiberglass ladder.  The fiberglass ladder currently used by Union Electric's Installers is nineteen feet long and weighs forty-eight pounds.  The ladder can be broken down into two sections.

(continued...)

In late June or early July 1994, Boersig asked Ed LaFaver, Meter Shop supervisor, to permit him to "go outside" and observe or try the Installer job so that he could determine whether he could do it despite his physical limitations. Boersig suggested to LaFaver that he could perform the Installer job by climbing ladders "one-legged." LaFaver told plaintiff that he did not want to train someone who would be unable to perform the job.

Union Electric asked Dr. Bryan Rogers to review the Installer Job Description and consult with Boersig's physicians to determine whether Boersig could safely perform the Installer position. Based on Dr. Roger's report, the restrictions from Boersig's physicians, and the observations of Boersig's supervisors, Union Electric determined that Boersig could not safely perform the Installer job. On July 25, 1994, after consulting with Boersig and Boersig's physicians, Guenther sent plaintiff a letter that stated:

> On July 11, 1994, we met in Ed LaFaver's office to inform you of our determination as to your fitness for promotion to fill a vacancy in the position of Electric Meter Installer, Grade II. It was our determination that your physical limitations would prevent you from safely and effectively performing these job duties. Therefore, promotion was denied.

From that time on, Union Electric filled vacancies that occurred in its Installer

---

[3](...continued)
Meter Installers are required to reconnect service at service outlets. Although the meter is usually at eye level, the service outlet to which the meter is connected can be up to eighteen feet off the ground. In situations such as these, the Installer must transport his ladder from his van to the location of the service outlet, set up the ladder, and then ascend it to gain access to the outlet itself. Once up the ladder, the Installer "makes up" the outlet by installing wire into a "split bolt connector" and then covers and tapes the connector. Service is usually energized at 240 volts while the Installer is working.

positions with Helpers who had less seniority than plaintiff. Boersig never filed a grievance with Local 1439 or a charge with the Equal Employment Opportunity Commission (EEOC) or the Missouri Commission on Human Rights (MCHR). When future Installer positions became available, Boersig failed to request any reasonable accommodations to allow him to successfully perform the job.

## D. Boersig Denied Promotion to Meter Repairman Because of CBA's Seniority Provision

In 1996, a Meter Repairman position became available. In accordance with the CBA, Union Electric offered it to employees then working on the same promotional level series. Gina Perry, who had been promoted to an Installer position in February 1995 (after plaintiff would have been promoted but for the alleged discrimination), sought and received the Repairman job.

On December 10, 1996, Boersig submitted a grievance report to Local 1439. Boersig wrote, "The company has denied promotion. This action has resulted in employees with less dept[artmental] seniority to advance in the promotional series. The denial of promotion dates to July 1994." Plaintiff requested as a remedy "promotion to Repairman status."

On December 20, 1996, Boersig filed another charge of discrimination with the EEOC. In the charge, plaintiff alleged that he had "been denied consideration for promotion to both Meter Installer and to Meter Repairman." Plaintiff explained, "On Monday, November 25, 1996, Gina Perry was to begin as Meter Repairman, having passed me over for promotion." Plaintiff described the discrimination as continual since April 5, 1996.

On October 7, 1997, Boersig commenced the instant action against defendants Union Electric and Local 1439, alleging unlawful denial of promotion to Repairman

and Installer. The district court granted defendants' motions for summary judgment on both claims. This appeal followed.

## II.  ANALYSIS

### A.  Repairman Position

#### 1.  Reasonable Accommodation

The ADA prohibits an employer from discriminating against a qualified individual with a disability by failing to make "reasonable accommodations to the known physical or mental limitations" of that individual. 42 U.S.C. § 12112(b)(5)(A). The issue before us is whether this provision requires an employer to provide an accommodation to a disabled employee that would directly violate the promotional series seniority system maintained by an employer and a union under the terms of a CBA. We hold that it does not.

Boersig first argues that Union Electric should have accommodated him by promoting him instead of Gina Perry to the Repairman position in November 1996. At the time the Repairman position became available, Boersig was a Helper and Perry worked as an Installer. Boersig acknowledges that the CBA required Union Electric to give hiring preferences to Installers over Helpers when filling vacant Repairman positions. However, Boersig argues that he should have been awarded the Installer position in 1994 or 1995. If he had been promoted at that time, Boersig would have had more promotional series seniority than Perry when Union Electric filled the Repairman position.

Insofar as Boersig's argument relies on Union Electric's alleged failure to promote him to Installer in 1994 and 1995, his argument fails. In granting summary judgment in favor of the defendants, the district court concluded that Boersig's

reasonable accommodation claim was time-barred because Boersig filed his EEOC complaint more than 300 days after the effective date of Union Electric's unlawful actions. See 42 U.S.C. § 2000e-5(e)(1) (applicable to ADA claims under 42 U.S.C. § 12117(a)). We agree with the district court. Boersig cannot now resurrect his time-barred claims by challenging Union Electric's adherence to the promotional system clearly set forth in the CBA.

Boersig also argues that Union Electric should accommodate his disability by simply promoting him directly from Helper to Repairman. Boersig argues that he is fully capable of performing all Repairman duties in a safe and effective manner, and, thus, Union Electric should promote him to Repairman ahead of Installers who would otherwise be entitled to the position under the CBA's promotional system. In light of unambiguous Eighth Circuit precedent, we reject Boersig's arguments.

In Benson v. Northwest Airlines, Inc., 62 F.3d 1108 (8th Cir. 1995), we held that the ADA does not require an employer to accommodate a disabled employee by violating a "bona fide" seniority system. A "bona fide" seniority system has been defined as "one that was created for legitimate purposes, rather than for the purpose of discrimination." Eckles v. Consolidated Rail, 94 F.3d 1041, 1046 n.7 (7th Cir. 1996). Boersig offers no evidence that Union Electric and Local 1439 incorporated the promotion system at issue in this case to discriminate against the disabled. Thus, Boersig has failed to demonstrate that the promotion system is not "bona fide." Moreover, although the CBA's promotional system is based on departmental seniority rather than total length of employment, we find that this CBA creates a seniority system which Union Electric was not required to violate to accommodate Boersig's disability. See Benson, 62 F.3d at 1114.

## 2. Disparate Impact

Boersig attempts to avoid the rule announced in Benson, a reasonable

accommodation case, by invoking a disparate impact theory of ADA liability, which defines discrimination as including the use of "selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities" unless such criteria are "shown to be job-related for the position in question and [are] consistent with business necessity." 42 U.S.C. § 12112(b)(6). Boersig argues that, because employees with his disability are unable to perform the duties of an Installer, the CBA's requirement that Union Electric offer vacant Repairman positions to Installers before Helpers is a selection criterion that is "unlawful as applied to him" because it has "the effect of discriminating against him because of his disability without any sound business justification." We reject Boersig's argument.

Although the term "selection criteria" is used in both Title VII and the ADA, Boersig has cited no cases to this Court supporting his argument that a bona fide seniority system fits within the definition of "selection criteria." Boersig has not convinced us that seniority systems should be considered "selection criteria" for purposes of 42 U.S.C. § 12112(b)(6). Including seniority systems within the definition of "selection criteria" would jeopardize many carefully negotiated CBAs because virtually all seniority systems contain prerequisites for movement between jobs. Many of these prerequisites "screen out" disabled employees from certain jobs within the seniority system. Unless an employer renegotiates this kind of seniority system with the union to allow certain accommodations for disabled employees, Boersig's "disparate impact" argument would require an employer to accommodate a disabled employee by violating the express terms of a CBA. However, we have repeatedly held that the ADA does not require an employer to "take action inconsistent with the contractual rights of other workers under a collective bargaining agreement." See, e.g., Benson, 62 F.3d at 1114. For similar reasons, the ADA does not require an employer to renegotiate a bona fide seniority system to avoid "screening out" a disabled employee who may not be able to reach the highest rung on a promotional series because of disability.

Seniority systems contained in CBAs, such as the one involved in the instant

case, create rights in union members which are protected by the National Labor Relations Act (NLRA), 29 U.S.C. § 151-187. Our Benson decision recognizes the importance of protecting these rights from unnecessary interference arising from the perceived need to accommodate a disabled employee under the ADA. We believe that these rights are entitled to protection regardless of whether a plaintiff seeks a reasonable accommodation or claims the seniority system has a disparate impact on disabled employees. In either case, the plaintiff invites the court to disrupt a carefully negotiated agreement between union and employer at the expense of other union employees who hold legitimate expectations of advancement based on the governing CBA. This sort of judicial intrusion into labor relations is unwarranted unless an employee can show that a seniority system was designed to discriminate against the disabled. Because we find the promotional system in the instant case is a bona fide seniority system, we reject Boersig's disparate impact claim.

## B. Installer Position

Boersig also argues that Union Electric unlawfully failed to promote him when Installer positions became available in 1996 and 1997. The district court granted summary judgment against Boersig, finding that Boersig failed to propose or request reasonable accommodation in order to perform the Installer positions. After a review of the record and the parties' briefs, we affirm. See 8th Cir. R. 47B.

## III. CONCLUSION

In sum, we affirm the district court's rulings in their entirety.[4]

---

[4]After careful consideration of the record and the parties' briefs, we reject all other arguments Boersig raises in this appeal without further comment.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.