**Jeffrey O. McCLEAN, Plaintiff,**

v.

**CASE CORPORATION, INC., Defendant.**

**No. CIV. A3–02–134.**

United States District Court, D. North Dakota, Southeastern Division.

April 20, 2004.

Patricia R. Monson, Douglas W. Gigler, Nilles, Hansen & Davies, Ltd., Fargo, ND, for Plaintiff.

Sarah Andrews Herman, Lynn Marie Block, Dorsey & Whitney, Fargo, ND, for Defendant.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

ERICKSON, District Judge.

Before the Court is a motion by Defendant for summary judgment (doc. #17). Plaintiff filed brief in opposition (doc. #24).

## SUMMARY OF DECISION

When Case had concerns about McClean's ability to perform his job and with his safety and the safety of his coworkers, it consulted with his treating physicians about McClean's condition. Case also reviewed a report prepared by Bryce Nelson that analyzed McClean's physical capabilities. Plaintiff presented no evidence that Case did not participate in good faith in the interactive process.

In addition, Case relied on Nelson's individual assessment to determine whether McClean posed a risk to himself or others on the manufacturing floor. McClean's treating neurologist also explained to Case her concerns about McClean's safety. Plaintiff presented no evidence to contradict McClean's status as a direct threat in Case's production environment.

Finally, McClean applied for SSDI. Plaintiff's explanations for why this application and his statements in it do not contradict his current ADA claim does not present sufficient evidence that a reasonable juror could conclude McClean could perform the essential functions of his job.

## FACTUAL BACKGROUND

In 1989 Case hired McClean to work at its four-wheel drive tractor plant in Fargo. The tractor plant is a manufacturing plant with an assembly line, overhead conveyors, and forklift traffic. (Hamm Aff. ¶ 2) In 2001, it employed approximately 700 people. (*Id.*)

McClean originally worked as a brake operator, but in August 1993, Case transferred him to the machining department. In the machining department, McClean worked as a Computer Numeric Control (CNC) machinist. He operated an MO89, which is a piece of equipment that removes metal from stock pieces by drilling, tapping, boring, milling, and spot facing. The operation of the MO89 also required being able to use an overhead hoist to lift heavier pieces of stock in and out of the machine. McClean also operated a forklift two to three times a day.

In 1993, McClean was diagnosed with multiple sclerosis (MS). MS is a "common demyelinating disorder of the central nervous system, causing patches of sclerosis (plaques) in the brain and spinal cord." Stedman's Medical Dictionary 1605 (27th ed.2000). Typical symptoms include visual loss, weakness, paresthesias, and bladder abnormalities. *Id.* For McClean, one symptom of the MS was that it caused weakness in his right lower extremity.

This caused him to walk slowly with a wide-based gait. His MS is progressive.

In July 2000, McClean's supervisor, Shaun Bratsch, became concerned about McClean's ability to move quickly enough to avoid falling objects and his ability to safely operate a forklift. One of McClean's treating physicians, Dr. Cynthia Knutson, also expressed her concern that he might be more at risk of falling objects. (Knutson Aff. ¶ 4) McClean's wife noticed that at some point between approximately July 2000 and January 2001, her husband's condition started to worsen. (Def.'s Ex. X)

In January 2001, Case transferred McClean to the D-series area to operate a bushings press. The bushings press is a filler machine, and it did not require the use of a forklift. (Bratsch Depo. at 60–61) On January 30, Case gave Dr. Knutson a copy of the CNC machinist job description. (Def.'s Ex. B) McClean gave Case permission to discuss his condition with his doctors. (McClean Aff. ¶ 10)

On February 7, Case placed McClean on short-term disability and asked him to make an appointment with Bryce Nelson. (McClean Aff. ¶ 20) Nelson is a Senior Assessment Specialist at Merit Care. Nelson performed a functional capacities assessment/evaluation (FCA) to review McClean's work capabilities. (Def.'s Ex. H) Nelson concluded that McClean fell into the category of "light work." (Id.) Case does not have any jobs in this "light work" category. (Hamm Aff. ¶ 5)

After reviewing the FCA, Dr. Hoadley Harris, another physician treating McClean, stated that if Case was unwilling to provide light duty work, McClean would need permanent disability. (Def.'s Ex. G) In August 2001, McClean submitted an application for long-term disability insurance benefits. (McClean Aff. ¶ 37) In that application, next to the box asking "Is patient disabled and unable to perform

his/her regular work," Dr. Knutson marked "Yes." (Def.'s Ex. J) Next to the question asking "Is patient disabled and unable to perform other gainful work," Dr. Knutson marked "Yes." (Id.) When asked whether there would be a change in either of these situations, Dr. Knutson said "No." (Id.)

McClean also filed an application for social security disability benefits. (McClean Aff. ¶ 37) This application was eventually granted, and he began receiving benefits in May 2002.(Id.) Case terminated his employ on February 12, 2004. (Id. at ¶ 38)

ANALYSIS

A party is entitled to summary judgment only if it can show that no genuine issue of material fact exists. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111 (8th Cir.1995). A court views the facts in the light most favorable to the non-moving party. *Id.* Summary judgment should seldom be granted in employment discrimination cases. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994).

I. ADA Claim

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948 (8th Cir.1999) (quoting 42 U.S.C. § 12112(a) (1999)). To establish a claim under the ADA and the NDHRA, a plaintiff must show that 1) he is disabled within the meaning of the Act, 2) he is qualified to perform the essential functions of the job either with or without accommodation, and 3) he has suffered an adverse employment action because of the disability. *Id.*; see also *Engel v. Montana Dakota Utils.*, 595 N.W.2d 319, 322 (N.D.1999). Case does not dispute that McClean, as a result of his confirmed diagnosis of MS, is considered a

person with a disability within the meaning of the ADA.

### A. Essential Functions and Reasonable Accommodation

■ To be "qualified" under the second step, a plaintiff must 1) possess the requisite skill, education, experience, and training for the position; and 2) be able to perform the essential job functions, with or without reasonable accommodation. *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 787 (8th Cir.1998) (citing 42 U.S.C. § 12111(8) (1998) and 29 C.F.R. § 1630.2(m) (1998)). Case does not dispute that McClean possesses the requisite skill, education, experience, and training for the position.

■ At all times, a plaintiff bears the burden of persuasion on the issue of whether he has been the victim of illegal discrimination due to his disability. *Fenney v. Dakota, Minnesota & Eastern R.R. Co.*, 327 F.3d 707, 712 (8th Cir.2003) (quoting *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995)). A plaintiff also bears the ultimate burden of proving that he is a "qualified" individual, but if the employer disputes that the plaintiff can perform the essential functions of the job, then the burden shifts to the employer to "put on some evidence of those essential functions." *Id.* (quoting *Benson*, 62 F.3d at 1113).

■ Case disputes that McClean can perform the essential functions of a CNC machinist, or even any job at Case. An essential function may be established by evidence that includes:

1) [t]he employer's judgment as to which functions are essential; 2)[w]ritten job descriptions prepared before advertising or interviewing applicants for the job; 3) the amount of time spent on the job performing the function; 4) the consequences of not requiring the incumbent to perform the function; and 5)

the current work experience of incumbents in similar jobs.

*Moritz*, 147 F.3d at 787 (quoting 29 C.F.R. § 1630.2(n)(3)).

The job description for a CNC machinist states that it requires continuous standing for ten hours or more, repetitive reaching, pushing, and bending. The job also requires working on or around moving machinery and driving a forklift. A CNC machinist must lift between 10 and 34 pounds frequently and 35 to 50 pounds occasionally. The job also requires operating a machine to remove metal from stock pieces. Plaintiff's Statement of Material Facts includes this same description of the work McClean performed as a CNC machinist, and it includes the requirement that McClean had to operate an overhead hoist occasionally. Defendant has met its burden of presenting some evidence of the essential functions of the job. *Fenney*, 327 F.3d at 712 (quoting *Benson*, 62 F.3d at 1113).

Dr. Harris determined that McClean needed to have "light duty" work, but Case does not have any light duty positions. Dr. Knutson determined that McClean was incapable of performing his regular work, or any other type of work, and that his condition prevented him from ever working. Bryce Nelson found that McClean fell into the light duty work category. Nelson determined that McClean would not be able to operate a forklift since he had difficulty lifting his right foot 8 inches for a total of 10 repetitions. Nelson also determined that McClean would not be able to operate the hoist since the weight lifting requirements were beyond his ability, and Nelson also found that McClean would have difficulty bending frequently. Dr. Wolff, a medical consultant for Case, concluded, through his observations and discussions with Dr. Knutson, that McCle-

918

an could not perform the essential functions of his job. (Wolff Depo. at 74)

To contradict the opinions of Nelson and Drs. Harris, Knutson, and Wolff that McClean was unable to perform the essential functions of his job, Plaintiff offers the deposition testimony of Bratsch, Schmidt, and Dr. Wolff. Dr. Wolff testified that he observed McClean work, and Dr. Wolff did not notice McClean having any problems performing his job or operating the overhead crane. (Wolff Depo. at 24–25 & 27) However, Dr. Wolff also observed McClean on a separate occasion in this same time-frame and noticed that he had difficulty operating a forklift. (Wolff Depo. at 25) Also, these observations occurred before Dr. Wolff talked to Dr. Knutson. (Wolff Depo. at 28) One isolated observation of McClean at work prior to gathering all the relevant information about McClean's condition does not contradict Dr. Wolff's ultimate conclusion that McClean could not perform the essential functions of the job. (Wolff Depo. at 74)

Paul Schmidt is the safety manager at Case, and Shaun Bratsch is a manufacturing engineer who supervised McClean. Schmidt testified that nobody from Case ever communicated to him any concerns with McClean's ability to perform the job tasks on the MO89. (Schmidt Depo. at 46–47) This testimony merely demonstrates that nobody told him that McClean was having difficulties. It does not contradict the opinions of the doctors who found that he could not perform the essential functions of the job. Plaintiff cites to pages 33 through 35 in support of its allegation that Bratsch testified that McClean could perform the essential functions of his job. However, the only thing that Bratsch states is that McClean could operate the MO89 machine. (Bratsch Depo. at 35) Bratsch does not address whether McClean could operate the overhead crane, and he also states that he observed McClean

having difficulty operating the forklift. (Bratsch Depo. at 34–36) Bratsch's testimony does not contradict the medical evidence.

■ Plaintiff has presented no evidence that creates a question of material fact on whether McClean was able to perform the essential functions of a CNC machinist without a reasonable accommodation. However, McClean may still be a qualified individual if he would be able to perform the job with a reasonable accommodation. *Moritz*, 147 F.3d at 787.

■■ Generally, it is the responsibility of the individual with the disability to inform his employer that an accommodation is needed. *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999) (citations omitted). Once an employer knows of an employee's disability and that the employee needs an accommodation, an employer is obligated to engage in an interactive process with the employee to determine whether there is a reasonable accommodation available. *Fjellestad*, 188 F.3d at 952 (citing *Taylor v. Phoenixville Sch. Dist.*, 174 F.3d 142, 158–59 (3d Cir. 1999)). An employer's failure to engage in the interactive process is prima facie evidence that it may be acting in bad faith. *Id.*

■ An employer may only be liable for failing to provide reasonable accommodations when it is responsible for the breakdown of communication in the interactive process. *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir.1996). An employee must demonstrate the following factors to show that his employer failed to participate in the interactive process: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist

the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (quoting *Taylor,* 174 F.3d at 165).

In this case, it is undisputed that Case knew about McClean's disability. McClean did make a request to have an electric cart available for him, but Case had already been investigating McClean's ability to work at the plant before he made that request.

■■■ There is an abundance of evidence that Case made a good faith effort to assist McClean in seeking accommodations. Case had its medical consultant, Dr. Wolff, investigate the matter. It reviewed Nelson's report of McClean's capabilities. Case also consulted with McClean's treating physicians, Drs. Harris and Knutson.

The fourth factor requires the employee to show that he could have been reasonably accommodated but for the employer's lack of good faith. *Id.* (quoting *Taylor,* 174 F.3d at 165). Nelson's conclusion was that McClean could only be assigned light duty work. Plaintiff does not dispute that Case does not have light duty work at its plant. Dr. Harris also told Case that McClean needed light duty work. Dr. Knutson told Case that McClean was incapable of performing his regular work, or any other type of work, and that his condition prevented him from ever working.

■■■ Plaintiff submitted the affidavits of Gregory Toutges, a vocational rehabilitation specialist, and Tom Baumgartner, a physical therapist, to contradict Nelson's conclusions and to suggest reasonable accommodations. However, these opinions were never communicated to Case at the time the interactive process was occurring, so Plaintiff cannot demonstrate bad faith on Case's part by now informing the company of accommodations. An employee cannot "expect the employer to read [his] mind and know [he] secretly wanted a

particular accommodation and [then] sue the employer for not providing it." *Mole,* 165 F.3d at 1218 (citations omitted).

Toutges and Baumgartner criticize Nelson's report for failing to specifically analyze McClean's ability to perform work on the bushings press, which was the job he held for approximately one month before being placed on short term disability. While Nelson did make some specific observations about McClean's ability to work as a CNC machinist on the MO89, Nelson's test actually analyzed McClean's overall physical capabilities. His ultimate conclusion that McClean could only perform light duty work is not contradicted by Toutges and Baumgartner.

Plaintiff has not raised a question of material fact as to whether Case failed to engage in good faith in the interactive process. All the information Case received indicated that McClean could not work in the plant any longer, and there were no reasonable accommodations available. Therefore, summary judgment is appropriate. *Beck,* 75 F.3d at 1137 (stating that there is no liability under the ADA when an employer makes reasonable efforts to both communicate with the employee and provide accommodations based on the information it possesses).

**B. Direct Threat**

■■■ The direct threat affirmative defense provides an alternate basis for summary judgment in this case. An employee is not a qualified individual if he poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Emerson v. N. States Power Co.,* 256 F.3d 506, 514 (7th Cir.2001) (quoting 42 U.S.C. § 12111(3)). An employee also poses a direct threat if his disability endangers his own safety on the job. *Chevron U.S.A., Inc. v. Echazabal,* 536 U.S. 73, 76, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002). Once

an employee presents a prima facie case of discrimination, the burden shifts to the employer to present a legitimate business reason for its decision, which includes the reason that the employee posed a "direct threat." *Emerson,* 256 F.3d at 514.

Whether an individual poses a "direct threat" must be based on an individualized assessment of the employee's ability to perform safely the essential elements of the job. *E.E.O.C. v. Chrysler Corp.,* 917 F.Supp. 1164, 1170 (E.D.Mich. 1996). The following factors must be considered when determining whether an employee poses a direct threat: 1) the duration of the risk, 2) the nature and severity of the potential harm, 3) the likelihood that potential harm will occur, and 4) the imminence of potential harm. *Emerson,* 256 F.3d at 514. An employee with a seizure disorder poses a direct threat in a production environment. *Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447–48 (11th Cir.1996).

While the Court has previously found that Plaintiff failed to make a prima facie case, for the purposes of this discussion, it will assume Plaintiff did meet its prima facie burden of discrimination. In this case, Nelson did perform an individualized assessment of McClean's physical capabilities. One of Nelson's conclusions was that McClean posed a safety hazard to himself and coworkers. (Pl.'s Ex. F) Dr. Wolff's concerns were that McClean would not be able to move quickly enough to avoid a falling object (Wolff Depo. at 33), to avoid an accident (Wolff Depo. at 46), and to evacuate the building in an emergency (Wolff Depo at 63). Dr. Wolff was also concerned that the weakness and buckling in McClean's leg could cause him to fall into a machine. (Wolff Depo. at 62)

Dr. Knutson also communicated to Case her concerns about McClean's safety. She told Case that McClean was at risk for falling, especially when lifting things.

(Wolff Depo. at 66) Dr. Knutson also expressed her concerns about McClean not being able to move quickly. (Wolff Depo. at 84) She suggested that Case should assign McClean something other than production work. (Wolff Depo. at 35)

Case could not imagine any possible accommodation for the concerns for McClean's and other co-workers' safety during emergency situations. (Wolff Depo. at 74) Plaintiff has offered no evidence of any accommodations. Summary judgment is appropriate since McClean posed a direct threat. *Moses,* 97 F.3d at 447–48.

C. Social Security Disability Application

As yet another alternate basis for summary judgment, there is the inconsistency between McClean's application for Social Security Disability Insurance (SSDI) and his current ADA claim. When an ADA plaintiff has previously made an application for SSDI, in order to defeat summary judgment, he must provide an explanation that is "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); see also *Lloyd v. Hardin County,* 207 F.3d 1080, 1084–85 (8th Cir.2000) (quoting *Cleveland,* 526 U.S. at 807, 119 S.Ct. 1597).

Plaintiff presents two reasons why McClean's application for SSDI was not inconsistent with his current ADA claim. First, he argues that Case forced him to apply for SSDI because he had to apply for long term disability benefits. McClean argues that since Case had determined he was unable to work, he thought he was entitled to social security benefits. How-

ever, McClean's application does not state that his employer found him unable to work. Instead, McClean wrote down his own observations about his physical condition. Therefore, this explanation does not present sufficient evidence that a reasonable juror could conclude McClean could perform the essential functions of his job.

Second, he argues that none of his statements in his SSDI application related to his ability to perform the essential functions of his job. In the application, McClean stated that he had weakness in his right arm and hand that made it hard for him to hold and carry things like glass and plates. (Def.'s Ex. X) He also had constant and increasing leg spasms that occurred all day and night. (*Id.*) He also said that he was unable to do any physical labor. (*Id.*) His difficulties with holding and carrying things would affect his ability to operate an overhead hoist and the machinery required for his job. The constant leg spasms would cause safety concerns for him and his coworkers in a manufacturing environment. These statements relate to McClean's ability to perform the essential functions of his job and to whether he posed a direct threat. This reason also does not present sufficient evidence that a reasonable juror could conclude McClean could perform the essential functions of his job. Therefore, summary judgment is appropriate.

II. Intentional Infliction of Emotional Distress Claim

 To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that there was extreme and outrageous conduct that was intentional or reckless, and this conduct caused severe emotional distress. *Dahlberg v. Lutheran Soc. Servs. of North Dakota,* 625 N.W.2d 241, 248 (N.D.2001) (citing *Muchow v. Lindblad,* 435 N.W.2d 918, 924 (N.D.1989)). A court initially decides whether the defendant's conduct reason-

ably may be regarded as extreme and outrageous. *Id.* at 249. The extreme and outrageous conduct must be so extreme in degree that it goes beyond all possible bounds of decency, or it is conduct that is utterly intolerable in a civilized society. *Id.* at 248.

 McClean alleges that when Case did not approach him about concerns with his ability to run a forklift and then placing him on short term disability was extreme and outrageous conduct. While a termination certainly causes stress and mental anguish in the person being terminated, *Dahlberg,* 625 N.W.2d at 249, it is not conduct that is so extreme and outrageous that it goes beyond all possible bounds of decency. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that this conduct would not reasonably be regarded as extreme and outrageous. Therefore, summary judgment is appropriate.

DECISION

Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.