United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2276EM

_____

Charles Kelley Smith,                 *
                                      *
          Appellant,                  *
                                      *
     v.                               *
                                      * On Appeal from the United
                                      * States District Court
McDonnell Douglas Corporation,        * for the Eastern District
a Missouri Corporation, and           * of Missouri.
International Association of           *
Machinists and Aerospace              *
Workers, Lodge 837,                   *
                                      *
          Appellees.                  *

_____

Submitted:  February 10, 1997

Filed: February 25, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HANSEN, Circuit Judge, and
     BATTEY,* District Judge.

_____

RICHARD S. ARNOLD, Chief Judge.


     In mid-1993, McDonnell Douglas Corporation fired Charles
Kelley Smith for trying to force a fellow employee to the shoulder
of the road as the two drove on an interstate highway in St. Louis
County, Missouri.  Smith, a member of the International Association

_____

     *The Hon. Richard H. Battey, Chief Judge, United States
District Court for the District of South Dakota, sitting by
designation.

of Machinists and Aerospace Workers union, claims that his dismissal violated the collective bargaining agreement because the

dismissal was not for just cause, and that the union violated its duty of fair representation by failing to pursue the matter to arbitration. The District Court[1] granted summary judgment to the company and the union. We affirm.

## I. Background

Aside from a three year stint in the Marine Corps, Charles Kelley Smith was an employee of McDonnell Douglas from 1974 until his dismissal in mid-1993. From 1990 until his dismissal, he served as a fabrication worker and was a member of a collective-bargaining unit. While serving in this capacity, Smith received five employee incident reports. Each of the first three was for repeated tardiness or absenteeism and contained the following warning: "IMMEDIATE AND SUSTAINED IMPROVEMENT MUST BE MADE ON YOUR PART OR YOU WILL BE SUBJECT TO FURTHER DISCIPLINARY ACTION UP TO AND INCLUDING DISCHARGE."

The fourth report Smith received was the apparent result of an ongoing dispute between himself and Walter Campbell, Smith's supervisor at the time, over Campbell's treatment of other employees and Campbell's alleged use of a company phone to make personal long distance calls. According to the report, Smith directed obscene language at Campbell and threatened him, asking him, for example, if he "ever had the flesh ripped out from under [his] rib cage?" For this behavior, Smith received a suspension and a final warning that any similar future violation would result in his immediate termination.[2]

---

[1]The Hon. Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[2]The Union and McDonnell Douglas ultimately settled this grievance, agreeing that McDonnell Douglas would reimburse Smith for five days of the two-week suspension if he were reinstated as a result of the pending arbitration proceeding in the grievance related to his discharge. The parties agreed that the settlement

agreement itself could not be used in any future arbitration proceeding.

-4-

Smith's fifth and final report also resulted from his ongoing feud with Campbell. Shortly after a night shift in May of 1993, Smith's car swerved towards a van driven by Campbell and carrying two other McDonnell Douglas employees, forcing the van towards the shoulder as the two vehicles traveled west on an interstate highway. Smith does not deny that the incident took place but claims that he swerved towards Campbell's car because he thought that Campbell was pointing a gun at him as the two drove next to each other. Two days later, according to the report, Smith was seen threatening Campbell on company premises and attempting to provoke a fight. Campbell was no longer Smith's supervisor at this point, and, according to Smith, the two worked "in a different area."

For these infractions and for his overall work record, the company fired Smith.[3] His fifth and final incident report stated that his conduct on the highway and later conduct on the premises violated three of the company's standards of behavior: "No. 14 - `Unsatisfactory conduct (conduct detrimental to the interests of the Company or others).'; No. 21 - `Threatening, intimidating, coercing, or otherwise interfering with others on Company premises at any time, including lunch and rest periods.'; and, No. 29 - `Willful abuse, or deliberate damage to Company property or to the property of others.'" See Appellant's App. Item 7, Exhibit 3.

The union shop steward then filed a grievance on behalf of Smith. After two meetings with the company to discuss the grievance, the Union formally requested an arbitration hearing pursuant to the collective-bargaining agreement. Two weeks after the selection of an arbitrator, District 837 of the Union was placed under the supervision of the International Association of

---

[3]The company had laid off Campbell several days before Smith's termination, though it appears that Campbell was never officially disciplined for his role in the feud with Smith.

Machinists and Aerospace Workers, AFL-CIO. The new Deputy of District 837 instituted a policy requiring all pending grievances to be reviewed by a randomly selected panel of three business representatives.

Two of the three panel members assigned to review Smith's case (Gerald Oulson and James Baker) decided not to submit Smith's case to arbitration. The third, Fred Golleher, thought the case should be submitted. In determining that Smith's case would have been unwinnable at arbitration, Oulson, who had handled Smith's case since the filing of the grievance, reviewed the statements of two witnesses to the highway incident as well as Smith's disciplinary record. Oulson had also been at an earlier hearing where both Smith and the company presented their sides of the story. He spoke with the Plant Chairman and shop steward, who, according to Oulson, felt strongly that the case should proceed to arbitration, about the grievances and with other witnesses to confrontational incidents between Smith and Campbell. Also, he consulted an arbitration text to determine whether and under what circumstances off-premises conduct is grounds for dismissal. He then reported his findings and made his recommendation to the other two panel members. Neither of the other two had independently investigated the matter, though both reviewed the statements of two witnesses to the highway incident as well as several other documents. The new Deputy of the District agreed with the majority's recommendation, as did the International Union representative assigned to the case. A week after the panel's decision, Oulson wrote Smith a letter informing him that the Union did not intend to pursue the grievance further.

II.

To prevail on his claim, Smith must establish that McDonnell Douglas terminated him in violation of the collective bargaining

-6-

agreement, and that the Union failed in its duty of fair representation by failing to pursue the matter to arbitration.

Establishing the latter is an especially difficult task. Merely demonstrating the error of the union's decision or even that the decision was negligent is not enough. So long as the union does not play favorites among its members and "so long as a union exercises its discretion in good faith and with honesty or purpose, a `wide range of reasonableness must be allowed.'" N.L.R.B. v. Am. Postal Wkrs. Union, 618 F.2d 1249 (8th Cir. 1980) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).

Smith advances two arguments to show why his termination was improper. First, he argues that he was not the aggressor on the highway because he believed at the time that Campbell had pulled a gun on him.[4] Second, he contends that his actions on the highway were not detrimental to the interests of the company or others, primarily because the incident occurred off-premises. Thus, unless he can establish that the Union's investigation was so perfunctory as to raise an inference of bad faith, Smith must establish either the arbitrariness of the Union's decision that the arbitrator would not have believed Smith's version of the facts, or of its legal determination that Smith's conduct violated company standards.

Smith has failed to establish the arbitrariness of either decision. First, it was eminently reasonable for the Union to determine that the arbitrator would not believe Smith. It is true that Oulson interviewed witnesses (whose names he could not remember) who confirmed that Campbell had threatened Smith in the past, thus establishing that Campbell was not an innocent party in the rivalry. Yet aside from the implausibility of Smith's account of the highway incident, Smith had received a prior report, which was also a final warning, for threatening Campbell in an extremely graphic manner, and he had received three disciplinary reports in the two years prior to that incident. There were no witnesses

---

[4]Smith also denies that he threatened Campbell two days later on company premises, as described in the fifth incident report.

(other than himself) to his version of the events on the highway,

while two McDonnell Douglas employees and members of the collective-bargaining unit who were traveling in Campbell's van corroborated Campbell's version. Two other witnesses, who were on the highway in another car, saw Smith's car swerve towards Campbell's van. Moreover, Smith was witnessed making threatening gestures to Campbell two days later.[5]

Smith also assails the Union's investigation for "fail[ing] to discover previous arbitration decisions wherein arbitrators held that employees could not be terminated for off-site acts." Appellant's Br. 11. Yet it is more than reasonable to think that an employee's attempt to run three McDonnell Douglas employees to the side of a highway while traveling at high speeds minutes after the end of a work shift, culminating a longstanding workplace rivalry that included past threats on company premises, is conduct that an employer may decide detrimentally affects its business regardless of whether or not those employees had to work together at the plant. The arbitration decisions that Oulson supposedly failed to unearth do not even remotely suggest that his determination was wrong, let alone arbitrary.[6]

Finally, Smith suggests that the Union's investigation was so perfunctory that it reveals bad faith and secret hostility on the part of the Union. He points to the fact that Oulson did not interview any witnesses to the incident, including Campbell, did

---

[5]Smith asserts that Campbell admitted that this incident never took place. Appellant's Br. 8. This is not true. See Appellant's App. Item 7, 61.

[6]The one decision cited by Smith that supports his argument at all is still easily distinguishable. He points to In re Honeywell, Inc., 68 LA 346 (1977), where an arbitrator found that two employees were wrongly disciplined for fighting over a card game at an employer-sponsored social club. The arbitrator found that the two would have no trouble working with each other after the fight. A single fight is a far cry from the persistent problems engendered by the Smith-Campbell feud and the gravity of Smith's aggressive and dangerous actions on the highway.

not speak to the independent witnesses to the highway incident, and

did not record the names of witnesses given to him by Smith who would have corroborated Smith's version of the Smith-Campbell rivalry. He also complains that Oulson would not return nine of his phone calls, though he admits they spoke a few times on the phone during the processing of the grievance, and that he falsely told Smith that the Union was actively pursuing the investigation when it was not.

Absent from Smith's allegations is any suggestion of what a further investigation might have revealed that would have aided him in any way. Smith identifies no witnesses that would corroborate his version of the highway incident or absolve him of responsibility for the report he received for threatening Campbell. Moreover, as stated above, Oulson interviewed witnesses to past confrontational incidents between Smith and Campbell. Smith assails Oulson for failing to interview witnesses to the highway incident. Yet without some indication of what such an interview could have revealed that did not appear in the statements of the witnesses, we cannot say that Oulson's failure to conduct the interviews was arbitrary. He also suggests that Oulson should have probed more deeply in investigating the fourth report but does not identify any witnesses who would have corroborated Smith's version of that event. Finally, Oulson's failure to return some of Smith's calls is serious only to the extent that Smith had anything substantive to tell Oulson that would have strengthened Smith's case. Smith admitted in his deposition that the two spoke on the phone a few times, and Oulson was present at the meeting where Smith told his side of the story. The record is devoid of any indication that future communication with Smith was necessary to conduct a proper investigation. Insufficient attentiveness alone does not establish a violation of the duty of fair representation.

Smith also claims that Oulson bore him a secret hostility because of earlier complaints Smith had made to Oulson's superiors

in the Union about Oulson's handling of employee grievances while Smith was shop steward.  Smith could tell that Oulson was hostile

to him by the "tone and inflection of his voice when speaking to [Smith], his mannerisms and demeanor when speaking to [him], and his reluctance to meet with [him] or to speak with [him] on the telephone."  Appellant's App. Item 4, Exhibit I.  There is no evidence that this supposed hostility affected the investigation in any way.  Allowing such allegations to defeat a motion for summary judgment would severely weaken the deference that courts owe to a union's exercise of its discretion not to pursue problematic grievances.

## III.

We hold that the Union did not violate its duty of fair representation to Charles Kelley Smith.  There is therefore no need to determine whether or not Smith's termination violated the collective-bargaining agreement.  The District Court's grant of summary judgment to the company and the Union is

Affirmed.

A true copy.

   Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-14-