# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-4234

_____

| | | |
|---|---|---|
| Bina Buford, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Marvin T. Runyon, Jr., in his | * | Western District of Missouri. |
| official capacity as Postmaster | * | |
| General of the United States | * | |
| Postal Services, | * | |
| | * | |
| Appellee. | * | |
| | * | |

_____

Submitted: September 24, 1998

Filed: November 20, 1998

_____

Before RICHARD S. ARNOLD, BEAM, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Bina Buford, a former postal employee, appeals the district court's[1] adverse grant of summary judgment in this action for breach of the collective bargaining agreement

_____

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

and for violations of the Second and Fourth Amendments.  We affirm the judgment of the district court.

## I.    BACKGROUND

Buford began her employment with the United States Postal Service (Postal Service) in 1986 as a letter carrier.  She was a member of the National Association of Letter Carriers (the Union) and worked for the Postal Service under a collective bargaining agreement negotiated between the Union and the Postal Service.

At work, Buford had difficulty getting along with Alicia Johnson, another carrier.  The record shows a history of hostility and repeated confrontations between the two.  The hostility culminated on July 11, 1995.  After an earlier confrontation between Buford and Johnson that same day, Buford remarked to her supervisor, Sharon Carter, and also to other co-workers, that if Johnson said anything about Buford's mother, Buford would bring a gun to work and shoot Johnson.[2]  In making these threats, Buford allegedly made references to Edmond, Oklahoma, the site of a shooting incident by a postal employee.

Shortly after making these comments, Buford was sent to the United States Postal Service Employee Assistance Program, where a licensed social worker counseled Buford.  Buford was then placed on emergency off-duty status without pay.  That same evening, Carter stopped by Buford's house to pick up Buford's gun.  On July 14, Buford went to a "Fitness for Duty" examination administered by Dr. Warren Phillips, a psychiatrist.  In a July 17, 1995, memorandum, Dr. Phillips stated that Buford was not a danger to her fellow employees and should return to work.  In an August 29, 1995, memorandum, Dr. Shanahan, the United States Postal Service Midwest Area Senior Medical Director, concurred with Dr. Phillips's assessment of

---

[2]Buford's mother had passed away several months earlier.

Buford's ability to return to work.  Nevertheless, on September 5, 1995, Buford's employment was terminated.

Buford promptly filed grievances regarding her suspension and permanent removal.  Both grievances were appealed and ultimately denied.  Thereafter, the Union requested arbitration in both cases.  On February 28, 1996, an arbitrator ruled in favor of the Postal Service.  He found that just cause existed for Buford's suspension and subsequent removal.  In July 1996, Buford filed this action in federal district court against the Postal Service[3] alleging breach of the collective bargaining agreement and violations of her constitutional rights.[4]  She sought compensatory damages and attorney's fees.  The defendant moved to dismiss, or in the alternative, for summary judgment.

The district court granted summary judgment and held:  (1) Buford could not prevail on her claim for breach of the collective bargaining agreement because she had not shown that the Union breached its duty of fair representation; and (2) Buford's Bivens claim was preempted by a comprehensive remedial scheme that was in place for redressing the grievances of postal employees.  Buford now appeals.

---

[3]Although the named defendant in Buford's complaint is Postmaster General, Marvin T. Runyon, he is sued in his official capacity.  It is well settled that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

[4]After filing the complaint, Buford conceded that her First and Fifth Amendment claims were precluded by our decision in Bradley v. United States Postal Serv., 832 F.2d 1061 (8th Cir. 1987).  Therefore, only her Second and Fourth Amendment claims are before us on appeal.

## II. DISCUSSION

### A. Breach of the Duty of Fair Representation

To prevail on her claim for breach of the collective bargaining agreement, Buford must show, as a prerequisite, that the Union breached its duty of fair representation. See Moore v. United States Postal Serv., 992 F.2d 180, 181 (8th Cir. 1993). Buford then must show that the Postal Service breached the collective bargaining agreement. See id.

The district court concluded that Buford failed to demonstrate that the Union breached its duty of fair representation. We review the findings of the district court on the issue of the breach of the duty of fair representation for clear error. See Warren v. International Bhd. of Teamsters, 544 F.2d 334, 341 (8th Cir. 1976). We review the district court's grant of summary judgment de novo and affirm only if the record, viewed in the light most favorable to Buford, shows there is no genuine issue of material fact and that the Postal Service is entitled to judgment as a matter of law. See Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068 (8th Cir. 1996).

A union will be found to have breached its duty of fair representation only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967); see also Smith, 96 F.3d at 1068. Mere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation. See Smith, 96 F.3d at 1068. The Supreme Court has recognized that "[a]ny substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991).

Buford argues that the district court incorrectly analyzed the duty of fair representation.[5] She claims that the district court focused exclusively on the bad faith prong of the <u>Vaca</u> test and failed to also consider whether the Union's conduct was either discriminatory or arbitrary. While the language of the district court opinion may have focused too narrowly on the bad faith element of the <u>Vaca</u> test, we find that the end result would be the same under the discriminatory or arbitrary prongs.

According to Buford, the court ignored the following deficiencies in the Union's representation: (1) failure to cite to the John Morris case, an earlier postal discipline case which resulted in a favorable outcome for the employee; (2) failure to demand Dr. Shanahan's report from the Postal Service; (3) failure to refute the claims that Buford had allegedly chanted "Edmond, Edmond, Edmond" during her argument with Johnson; and (4) failure to refute the contention that Buford had previously brought a gun to the workplace.

We find that the evidence does not support a claim of discrimination by the Union. We reject Buford's argument that the dissimilar outcome between her case and another case points to discrimination because it violates the principle that "similar complaints will be treated consistently." <u>Vaca</u>, 386 U.S. at 191. Buford confuses similar treatment with a similar result. A union is required to provide only similar treatment. <u>See, e.g.,</u> <u>Johnson v. Air Line Pilots</u>, 650 F.2d 133, 137 (8th Cir. 1991) (stating that in a union's representation of its members, "'[t]he complete satisfaction of all who are represented is hardly to be expected'") (quoting <u>Ford Motor Co. v. Huffman</u>, 345 U.S. 330, 338 (1953)). We find no inference of discrimination where the

---

[5]Buford also argues that the district court committed reversible error when it inaccurately recited in its opinion that she *directly* threatened Johnson when what she actually did was only to tell *others* about her threat to harm Johnson. We fail to see the significance of this argument. The district court's mischaracterization of the facts would be of consequence only if the court were reviewing the arbitration decision on the merits.

record shows that the Union treated Buford's case in a fair manner and diligently pursued her complaints throughout the entire grievance procedure. See, e.g., Stevens v. Highway, City & Air Freight Drivers, 794 F.2d 376, 378 (8th Cir. 1986); Cf. Minnis v. Int'l Union, 531 F.2d 850, 854 (8th Cir. 1975) (finding sufficient evidence to go to a jury trial when a union agreed to represent the grievant and then made no effort to do so, dropping the grievance without notifying employee until almost six months later).

Nor do we find that the Union's actions were arbitrary. A union's conduct is arbitrary if, considering all the circumstances at the time of the union's actions, its behavior is "so far outside a 'wide range of reasonableness' as to be irrational." Smith, 96 F.3d at 1068 (quoting Beavers v. United Paperworkers Int'l Union, Local 1741, 72 F.3d 97, 100 (8th Cir. 1995)). Viewed in the light most favorable to Buford, the Union's actions constituted, at most, negligence on its part and not such an egregious failure as to amount to a breach of its duty of fair representation. The Union did not cite to the John Morris case because pursuant to a settlement agreement, it was barred from doing so. Its failure to obtain a copy of Dr. Shanahan's report was not a critical error when that report did nothing more than concur with Dr. Phillips's report which was already before the arbitrator. See Smith, 96 F.3d at 1069 (stating that whether a union "should have obtained more records is a matter within the wide range of reasonableness afforded to a union in pursuing a grievance") (citation omitted). Finally, the Union's failure to refute the "Edmond" comment and the contention that Buford had once brought a gun to work, while arguably unfortunate, does not rise to the level of egregiousness necessary for a breach of the duty of fair representation. We have cautioned in the past that union representatives are not lawyers, and a case claiming breach of the duty of fair representation is not the same thing as a legal malpractice case or a post-conviction petition claiming ineffective assistance of counsel. See Stevens, 794 F.2d at 377.

In sum, there has been no showing that the Union's conduct in handling Buford's grievance was arbitrary, discriminatory, or in bad faith. Because there is no genuine

issue of material fact as to the Union's duty of fair representation, we find that summary judgment in favor of the Postal Service was proper on Buford's claim for breach of the collective bargaining agreement.  See Taylor v. Belger Cartage Serv., Inc., 762 F.2d 665, 668 (8th Cir. 1985).

## B.    Bivens Claim

Buford also asserts a Bivens claim[6] against the Postmaster General, Marvin T. Runyon.  In this claim, Buford argues that her Second and Fourth Amendment rights were violated when her supervisor, Carter, came to her house on the evening of July 11, 1995, and took Buford's gun.  We are skeptical that the record shows any violation of Buford's rights.  Even assuming a constitutional issue, however, we find no  cognizable Bivens claim.

The district court held that Buford's Bivens claim was preempted by the comprehensive remedial scheme already in place for the grievances of postal employees.  See  39 U.S.C. §§ 1001-11, 1201-09.  While this may be correct, we hold that the Bivens action is barred for a more fundamental reason.  The complaint was brought against Runyon in his official capacity as Postmaster General.  As we noted earlier, a suit against Runyon in his official capacity is treated as a suit against the Postal Service.  It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.  See Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982).[7]

---

[6]A Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights.  See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

[7]Additionally, we note that Buford does not claim that Runyon actually participated in the alleged violations, but rather seeks to hold him liable for Carter's actions under a respondeat superior theory.  As with actions under 42 U.S.C. § 1983,

## III.   CONCLUSION

We find that no genuine issue of material fact exists as to the Union's breach of the duty of fair representation.   We also find that Buford's <u>Bivens</u> claim fails. Accordingly, the judgment of the district court granting summary judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

------

there is no respondeat superior liability in <u>Bivens</u> actions; defendants are liable for their personal acts only.  <u>See</u> <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995).