**Charles E. WOOD, Plaintiff,**

v.

**CROWN REDI–MIX, INC., d/b/a Crown Building Materials, Inc. and General Team and Truck Drivers, Helpers and Warehousemen, Local 90, Defendants.**

**No. 4:01–CV–40127.**

United States District Court,
S.D. Iowa,
Central Division.

Aug. 29, 2002.

Joseph L. Walsh, Hedberg, Owens & Hedberg, Des Moines, IA, Donna M. Schauer, Schauer Law Firm, Des Moines, IA, for plaintiff.

Greg A. Naylor, Pingel & Templer, West Des Moines, IA, Andrea F. Hoeschen, Previant, Goldberg, Uelmen, et al., Milwaukee, WI, Paige E. Fiedler, Fiedler & Townsend, Johnston, IA, for defendants.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTIONS TO STRIKE

GRITZNER, District Judge.

This matter is before the Court on two motions for summary judgment. Plaintiff, Charles E. Wood ("Wood"), filed a complaint against General Team and Truck Drivers, Helpers and Warehousemen, Local 90 ("the Union"), Robert E. Jackson (Secretary–Treasurer and Business Agent for the Union), and Frank "Huck" Thompson (Business Agent for the Union), on February 28, 2001, alleging disability discrimination under the ADA. On March 5, 2001, Wood filed a separate complaint against Crown Redi–Mix, Inc., d/b/a Crown Building Materials, Inc. ("Crown"), also alleging disability discrimination. On July 27, 2001, Judge Wolle ordered the two cases consolidated. On September 12, 2001, defendants Robert E. Jackson and

Frank "Huck" Thompson were dismissed from the case. The remaining defendants, Crown and Teamsters Local 90, each moved for summary judgment on June 3, 2002.

Arguments on the motions were heard on July 26, 2002. Crown was represented by attorney Greg Naylor, and the Union was represented by attorneys Andrea Hoeschen and Paige Fiedler. Attorney Joe Walsh argued in resistance to Crown's motion, and attorney Donna Schauer argued in resistance to the Union's motion. On July 29, 2002, Crown moved to strike the workers' compensation arbitration decision letter and report of Dr. Robert C. Jones, pursuant to Fed.R.Civ.P. 56(e). For the reasons discussed below, both motions for summary judgment are **granted**. Crown's motion to strike is **denied**.

## I. BACKGROUND

Wood was hired at Crown in July 1997 as a ready-mix truck driver. Crown was a union company, and Wood was a member of a bargaining unit while employed at Crown. Teamsters Local 90 was the labor organization responsible for representing the bargaining unit during Wood's employment. During Wood's employment, a collective bargaining contract, negotiated by Teamsters Local 90, governed the terms and conditions of employment for members of the bargaining unit, including Wood. Some of the pertinent provisions of the collective bargaining agreement ("Agreement") include: Crown was not allowed to enter into any agreements or contracts with individual employees which conflicted with the Agreement;[1] Crown had the right to lay off employees and to make reasonable rules and regulations to govern the workforce; and bid jobs at Crown were awarded to the most senior, qualified employee interested in the job.

On October 29, 1998, Wood suffered a work-related back injury while working when he slipped and fell into a hole partially covered with plywood. Wood's treating physician, Dr. Boulden, eventually proposed permanent restrictions on Wood which prohibited him from driving a ready-mix truck, lifting over 50 pounds, and from doing extensive bending, twisting, and lifting. Because Wood could no longer drive a ready-mix truck, an essential duty of every position at Crown,[2] he was terminated on March 29, 1999, ten days after he presented the permanent restrictions to his employer.

After his termination, Wood filed a grievance with the Union. Thompson, the Union Business Agent, reviewed Wood's

---

1. Wood contends that Crown did not follow this policy. He points to employee Joe Carter, who quit his job, moved to Colorado and, upon rehire, was granted full seniority. Wood also contends that at one point, he himself was party to an agreement that deviated from the terms of the collective bargaining agreement. He contends that he was in a wage scale that was appropriate for a person who had been employed at Crown for three years, when in fact he had not yet been there for three years. Defendants respond that neither of these instances conflicted with the Agreement.

2. Wood submits that while the current version of the Agreement provides that all workers must be able to drive a ready-mix truck, the version that was in effect at the time of his termination contained no such language. However, even if the applicable Agreement did not specifically require the ability to drive a ready-mix truck, it did contain a management rights clause in which Crown retained the right to specify the duties of each position.

While Wood concedes all Crown employees were expected to drive a ready-mix truck in an emergency, he makes the conclusory allegation that the ability to drive a ready-mix truck in an emergency is not actually an essential duty of every position at Crown. However, representatives from Crown and the Union testified that it is an essential duty, and Wood has offered no facts inconsistent with the company's expressed requirement.

medical restrictions and, after inquiry, determined that at that time there were no open jobs which Wood could perform. Therefore, the Union concluded that Crown had not breached the Agreement and, as a result, declined to pursue Wood's grievance.

On April 14, 1999, Wood filed a charge with the Iowa Civil Rights Commission and the EEOC claiming that he was disabled in his ability to "work, walk, and in the general activities of daily living", that Crown discriminated against him on the basis of physical disability when it terminated him, that he "believed the company could have accommodated [him], as they had with others", and that the Union discriminated against him on the basis of disability when it declined to pursue his grievance. On December 5, 2000, the EEOC notified Wood that it was unable to conclude that the information contained in Wood's charge established a violation of the statutes, and that it was also unable to certify that Crown and the Union were in compliance with the statutes. The EEOC also notified Wood of his right to sue under Title VII and/or the ADA.

Viewing the facts in the light most favorable to Wood, as this Court must, the effects of Wood's purported disability are as follows: he is unable to walk more than one-half mile before resting and walks with a cane on occasion; he has numbness in his toes and the back of his left leg; his left knee is weak and collapses, and he has "drop foot" in his left leg; he is able to tie his shoes and do lawn care, but with some difficulty; he is able to help with household chores "as long as they don't require a lot of bending"; he would require assistance if furniture needed to be moved around the house; he is able to lift up to 50 pounds, and he has some difficulty at his current job when he has to lift 60–65 pounds; he does not have a handicapped parking sticker because he has "too much

pride to apply for one"; and he has sexual dysfunction.

Wood testified that he is currently employed as a truck driver for Brown Logistics, where he occasionally lifts up to 60–65 pounds, with some difficulty. Wood asserts that, while he can drive a truck, he has "recurring pain and must watch how [he] lift[s] things, the weight of the objects [he] lift[s], and how [he] turn[s] and bend[s]". Wood states that at his current position he is not required to do much lifting because the trucks are loaded with a forklift or crane. He has also had three other truck driving jobs in the interim: hauling Pella windows, driving for Chicago Tube & Iron as a rental driver, and driving for U.S.F. Dugan.

## II. STANDARD FOR SUMMARY JUDGMENT

Defendant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [defendant] is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). To survive a properly-supported motion for summary judgment, Wood is required to go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial". Fed.R.Civ.P. 56(e). "All reasonable inferences of fact from the record are construed in the light most favorable to the party opposing summary judgment." *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 789–90 (8th Cir.2002). "If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate because 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other

facts immaterial'." *St. Jude Med., Inc. v. Lifecare Intern., Inc.,* 250 F.3d 587, 595 (8th Cir.2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc.,* 162 F.3d 991, 997 (8th Cir. 1998) ("Summary judgment is appropriate where there is no independent evidence, other than [plaintiff's] unsubstantiated allegations.").

■ The Eighth Circuit has cautioned that "summary judgment should seldom be used in employment discrimination cases". *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." *Whitley v. Peer Review Sys., Inc.,* 221 F.3d 1053, 1055 (8th Cir.2000) (citations omitted); *see also Kellogg v. Union Pac. R. Co.,* 233 F.3d 1083, 1086 (8th Cir.2000) (summary judgment is proper if the employee fails to establish any element of his prima facie ADA claim).

### III. LEGAL ANALYSIS

■ Both defendants have moved for summary judgment on the grounds that Wood cannot establish a prima facie case of disability discrimination under the ADA. Wood has the initial burden to establish a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To establish a prima facie case of disability discrimination under the ADA, Wood must prove all of the following elements: (1) that he is disabled under the ADA; (2) that he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) that he has suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *E.g., Sprenger v. Fed. Home Loan Bank of Des Moines,* 253 F.3d 1106, 1113 (8th Cir.2001).

Both defendants argue that Wood is not disabled within the meaning of the ADA. Under the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(2) (1994); *Otting v. J.C. Penney Co.,* 223 F.3d 704, 708 (8th Cir. 2000). According to the EEOC regulations, "substantially limits" means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2001); *see also Moysis v. DTG Datanet,* 278 F.3d 819, 825 (8th Cir.2002) ("The Supreme Court has made it clear that the ADA 'addresses substantial limitations on major life activities, not utter inabilities'.") (quoting *Bragdon v. Abbott,* 524 U.S. 624, 641, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)).

The EEOC regulations list the following factors to consider in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long-term impact, or the expected permanent or

long-term impact of or resulting from the impairment of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (2001). The Interpretive Guidance to these regulations emphasizes that this is an individualized assessment and that this determination "must be made on a case by case basis". 29 C.F.R. app. § 1630.2(j) (2001).

Defendants contend that Wood's "disability" does not substantially limit one or more major life activities. Both defendants cite *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), for the proposition that this inquiry depends on the employee's ability to do those activities central to most people's daily lives, such as brushing their teeth, washing their face, bathing, gardening, fixing breakfast, doing laundry, and picking up around the house ("the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job"). *Toyota,* 122 S.Ct. at 693. Defendants contend that because Wood is able to perform the activities central to most people's daily lives (*e.g.,* do household chores, tie his shoes, etc.), he is not disabled under the ADA.

However, in a recent ADA case, the Eighth Circuit distinguished *Toyota,* noting that the inquiry there was whether the plaintiff was substantially limited in the major life activity of *performing manual tasks. Moysis v. DTG Datanet,* 278 F.3d 819, 825 n. 2 (8th Cir.2002). Thus, while *Toyota* may have precluded Wood from predicating his disability claim on the major activity of performing manual tasks, he still might be substantially limited in an-

other major life activity.[3] Wood claims that he is substantially limited in the major life activities of walking, procreation, and working.

■ Because Wood is unable to walk more than one-half mile without resting, it could be argued that he is "significantly restricted as to the condition, manner, or duration under which an individual can [walk] as compared to the condition, manner, or duration under which the average person in the general population can [walk]". 29 C.F.R. § 1630.2(j)(1)(ii) (2001). An example in the Interpretive Guidance states: "an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking". 29 C.F.R. app. § 1630.2(j) (2001).

However, the Eighth Circuit has held that difficulty walking "long distances" without getting fatigued or experiencing back discomfort is a "moderate", not a substantial, limitation on the major life activity of walking and, thus, is not a disability under the ADA. *Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999); *see also Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 960, 962 (8th Cir.2000) (affirming summary judgment for the defendant where plaintiff was able to walk approximately one mile and was thus not substantially limited in walking); *Hanson v. Prairie Material Sales, Inc.,* No. 00 C 1574, 2001 WL 1105097 *7 (N.D.Ill. Sept.20, 2001) (holding that the plaintiff was not substantially limited in walking although he walked at a slower pace, experienced back discomfort if he walked "long distances", and occasionally needed help going up stairs). This precedent controls, and the

---

**3.** Other major life activities enumerated in the EEOC interpretive guidelines include caring for one's self, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. app. § 1630.2(i) (2001). However, "[t]his list is not exhaustive". 29 C.F.R. app. § 1630.2(i) (2001).

Court finds that Wood is not substantially limited in the major life activity of walking.

▮ With respect to the major life activity of working, the Interpretive Guidance to the EEOC regulations explains:

If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.

29 C.F.R. app. § 1630.2(j) (2001). The Court will address this issue briefly.

▮ The determination of whether an individual is substantially limited in working must also be made on a case by case basis. *Id.; Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir. 1999).

In the context of working as a major life activity,

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial

limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).[4]

Defendants contend that Wood's inability to drive a ready-mix truck is particular to that specific job and does not constitute a substantial limitation in the major life activity of working. Crown points out that Wood is not restricted in the ability to perform a class of jobs (truck driving), because he is able to drive dump trucks, aggregate trucks, and low boy trucks. An example in the Interpretive Guidance to the EEOC regulations is instructive: "an individual who cannot be a commercial airline pilot because of a minor vision impairment, but who can be a commercial airline co-pilot or a pilot for a courier service, would not be substantially limited in the major life activity of working". 29 C.F.R. app. § 1630.2(j) (2001). The Court finds that a restriction as narrowly drawn as Wood's prohibition against driving ready-mix trucks would not constitute a substantial limitation on the major life activity of working.

▮▮ Wood alleges that he has been impotent since his back surgery and that he cannot have children because he is unable to maintain a full erection or "complete the act of sexual intercourse". Reproduction is a major life activity. *Bragdon v. Abbott*, 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). The Court recognizes that sexual dysfunction

---

**4.** The following factors may also be considered in determining whether an individual is substantially limited in working:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skill, or abilities, within that geographical area, from which the individual is also

disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual had been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skill, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii) (2001).

may qualify as a disability under the ADA. *See McAlindin v. County of San Diego,* 192 F.3d 1226, 1234–35 (9th Cir. 1999); *Hiller v. Runyon,* 95 F.Supp.2d 1016, 1021 (S.D.Iowa 2000); *Cornman v. N.P. Dodge Mgmt. Co.,* 43 F.Supp.2d 1066, 1072 (D.Minn.1999). The Court would be inclined to find a material issue of fact on this question, but Plaintiff has failed to establish the second and third elements of his prima facie case of discrimination, as discussed below. Accordingly, no specific finding of a qualifying disability on this basis is necessary to the Court's decision.[5]

■ Crown also argues that not only was Wood not *actually* disabled under the ADA, but neither did he have a record of having a disability, nor was he regarded as having a disability. The court agrees. Having a record of such impairment means "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities". 29 C.F.R. § 1630.2(k). "The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities." 29 C.F.R. app. § 1630.2(k).

■ "The provision addressing perceived disabilities 'is intended to combat the effects of "archaic attitudes", erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities'." *Brunko v. Mercy Hospital,* 260 F.3d 939, 942 (8th Cir.2001) (citing *Wooten v. Farmland*

*Foods,* 58 F.3d 382, 385 (8th Cir.1995)). In order to establish a prima facie case of a perceived disability under the ADA, Wood must show that Crown "regarded him as having an impairment that substantially limit[ed] a major life activity". *Roberts v. Unidynamics Corp.,* 126 F.3d 1088, 1092 (8th Cir.1997) (citing *Wooten,* 58 F.3d at 385). The Court finds it inescapable on this record that Crown only perceived that Wood was unable to perform the necessary function of driving a ready-mix truck.

■ Defendants contend that since Wood cannot drive a ready-mix truck, he cannot perform the essential functions of his old job of ready-mix truck driver. The parties agree that Wood cannot perform this function *without* reasonable accommodations.

The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose undue hardship on the operation of the business of such covered entity". 42 U.S.C. § 12112(b)(5)(A) (1994). "Reasonable accommodations" may include "reassignment to a vacant position". 42 U.S.C. § 12111(9)(B) (1994); *Fjellestad,* 188 F.3d at 951 n. 4.

■ It is Plaintiff's initial burden to demonstrate that he could have performed the essential functions of his job with reasonable accommodation and that reason-

---

**5.** The specific circumstances of this case also obviate the necessity of addressing the issue of a connection between the Plaintiff's disability and the functions of the job. The ADA prohibits discrimination "against a qualified individual with a disability *because of the disability* ...". 42 U.S.C. § 12112(a) (emphasis added). Clearly a disability arising from sexual dysfunction bears no relationship to the

job of driving a ready-mix truck and would in no way interfere with that job assignment. While the mirror image of the issue was arguably discussed in *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 693, 151 L.Ed.2d 615 (2002), the Court is unaware of any precedent precisely on this issue.

able accommodation was possible. *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1016 (8th Cir.2000). Then the burden shifts to Defendant " 'to show that it is unable to accommodate the employee' ". *Id.* (quoting *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112 (8th Cir. 1995)). "If the employer presents credible evidence that reasonable accommodation is not possible or would be unduly burdensome, then the plaintiff must produce evidence 'concerning his individual capabilities and suggestions for possible accommodations to rebut the employer's evidence'." *Gardner v. Morris,* 752 F.2d 1271, 1280 (8th Cir.1985) (quoting *Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir.1981)). Wood has not suggested any ways in which he could have been reasonably accommodated to perform his current job of ready-mix driver.

When an individual cannot be reasonably accommodated to perform his current position, reassignment to a vacant position should be considered. 29 C.F.R. app. § 1630.2(*o*) (2001). Wood has suggested several variations on this possibility: (i) placing him in a position at Crown in which driving a ready-mix truck was not an essential function and waiving the requirement of ability to drive a ready-mix truck in an emergency; (ii) placing him on a leave of absence until a suitable position opened up; (iii) making an exception to the policy of awarding bid jobs to the employee with the most seniority by reserving the newly created yard man position for Wood even if he was not the most senior employee interested; or (iv) transferring him to another "Gillotti company" [6] into a position that did not require ready-mix truck driv-

ing (specifically, the vacant aggregate truck driver position at Midwest Redi-Mix). It should be noted that Wood is only required to make a "facial showing" that accommodation was possible. *See Fjellestad,* 188 F.3d at 951. Each of Wood's suggestions and Defendants' responses thereto will be addressed in turn below.

Defendants contend that it is unable to accommodate Wood in this way because the ability to drive a ready-mix truck in an emergency is an essential function of *every* position at Crown. "[J]ob restructuring" is listed in the EEOC regulations as a possible reasonable accommodation. 29 C.F.R. § 1630.2(*o*)(2)(ii) (2001). "An employer ... may restructure a job by reallocating or redistributing non-essential, marginal job functions ... An employer ... *is not required to reallocate essential functions.*" 29 C.F.R. app. § 1630.2(*o*) (2001) (emphasis added).

Although there are no job descriptions in the record, Keith Kuennen testified that *all* Crown employees must be able to drive a ready-mix truck as an essential function of their job. The Court notes that it is not its position to question the soundness of Crown's business judgments. *See e.g., Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 973 (8th Cir.1994) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."); 29 C.F.R. app. § 1630.2(n) (2001) ("It is important to note that the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards, whether qualitative or quantitative, nor to require employers to lower such standards."). Because Crown has produced

---

**6.** Wood apparently envisions the several companies owned by the Gillotti family as one conglomerate entity. However, Steve Gillotti testified that each company is a legally sepa-

rate entity, and there has been no evidence produced in the record to contradict this testimony.

credible evidence that accommodation is not possible, the burden now shifts to Wood to rebut this evidence. *Gardner v. Morris,* 752 F.2d 1271, 1280 (8th Cir.1985). Wood has produced no evidence that the ability to drive a ready-mix truck in an emergency is not an essential function of every position at Crown.[7] In fact, Wood admitted in his deposition testimony and his Memorandum Resisting Summary Judgment that although he did not think it was an essential function of the job, he "had always believed that other drivers had to be able to drive a ready-mix truck in an emergency". Therefore, Wood's reassignment/restructure suggestion is not a reasonable accommodation.

The Interpretive Guidance also lists "permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment" as a possible reasonable accommodation. Wood argues that there is no reason why the medical leave that he was on prior to his termination could not have been extended. Kuennen admitted that Crown was not required to terminate Wood when it did. The Union conceded that it would not have objected to an extended leave of absence.

The Interpretive Guidance explains:

Employers should reassign the individual to an equivalent position ..., if the individual is qualified, and if the position is vacant within a reasonable amount of time. A "reasonable amount of time" should be determined in light of the totality of the circumstances. As an example, suppose there is no vacant position available at the time that an individual with a disability requests reassignment as a reasonable accommodation. The employer, however, knows that an equivalent position, for which the individual is qualified, will become vacant next week. Under these circumstances, the employer should reassign the individual to the position when it becomes available.

29 C.F.R. app. § 1630.2(*o*) (2001); *see also Fjellestad,* 188 F.3d at 950 (reassignment to a vacant position is a possible accommodation).

■■■ However, since driving a ready-mix truck is an essential function of every position at Crown, and Wood's restriction from driving ready-mix trucks was permanent, extending his leave of absence would have served no purpose. Crown submits that the yard man position, for which Wood desired to remain on leave to await, also required driving a ready-mix truck. Again, Wood has produced no evidence to rebut this job requirement. Therefore, allowing Wood to remain on leave to await the creation of a position for which he was not qualified[8] is not a reasonable accommodation.

Defendants argue that forgoing the bidding process and seniority system for Wood would have been outside the collective bargaining agreement and as such was

---

7. The speculation and conjecture on this issue contained in Wood's deposition is insufficient to overcome summary judgment. "In order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy'." *Godfrey v. Pulitzer Pub. Co.,* 276 F.3d 405, 412 (8th Cir.2002) (quoting *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994)).

8. An individual is qualified for a vacant position "if he can perform the 'essential functions' of the position, with or without reasonable accommodation". *Riley v. Weyerhaeuser Paper Co.,* 898 F.Supp. 324, 327 (W.D.N.C. 1995). Since Wood cannot drive a ready-mix truck, and he has produced no evidence indicating that this is not an essential function of positions which opened subsequent to his termination, Wood was not qualified for those future positions either.

*per se* unreasonable. *See U.S. Airways, Inc. v. Barnett,* —— U.S. ——, ——, 122 S.Ct. 1516, 1524, 152 L.Ed.2d 589 (2002) (recognizing that the lowers courts have unanimously found that collectively bargained seniority trumps the need for reasonable accommodation); *Boersig v. Union Elec. Co.,* 219 F.3d 816, 821–22 (8th Cir.2000) (holding that the employer was not required to violate the collective bargaining agreement to accommodate plaintiff's disability).

■ Wood submits that Crown did not strictly adhere to its seniority system. However, the examples that he cites (the Joe Carter incident and his being in the three-year pay scale) differ in their essential nature from ignoring seniority for purposes of job placement. As the Union points out, in doing so, Crown would have had to displace more senior employees to accommodate Wood. "An employer is not required to accommodate a handicapped individual in a manner that would violate the rights of other employees under a legitimate collective bargaining agreement." *Mason v. Frank,* 32 F.3d 315, 319 (8th Cir.1994). Thus, forgoing the bidding process to reassign Wood is not a reasonable accommodation.

■ Crown argues that it was impossible for it to transfer Wood to another "Gillotti company" because each company is a separate entity. *See Emrick v. Libbey–Owens–Ford Co.,* 875 F.Supp. 393, 398 (E.D.Tex.1995) ("[A]n employer is only required to offer transfer to another facility in situations where it is the regular practice of that employer to transfer employees between facilities."). Crown has presented evidence that it is its policy *not* to transfer employees between companies (Kuennen's testimony). Wood has not carried his burden by submitting any evidence to rebut this. Thus, Crown was not required to transfer Wood to another "Gillotti company" as a reasonable accommodation.

■ It is undisputed that Crown terminated Wood because of his inability to drive a ready-mix truck. The termination letter stated that Wood was being terminated "because of [his] permanent medical restrictions". However, because he was not qualified to perform the essential functions of his job, Crown's adverse employment action does not constitute *unlawful* discrimination.

Because Wood has failed to establish the second and third elements of his *prima facie* case, Defendants are entitled to summary judgment. *E.g., Kellogg v. Union Pac. R. Co.,* 233 F.3d 1083, 1086 (8th Cir. 2000) (holding summary judgment is proper if the employee fails to establish any element of her prima facie ADA claim).

**Union Liability Under the ADA**

■ Even if Wood were able to establish a *prima facie* case of discrimination, the Union would still be entitled to summary judgment. In the Eighth Circuit, in order for a union to be held liable under the ADA, there must first be a finding that it breached its duty of fair representation. *Martin v. Local 1513 & Dist. 118 of the Int'l Ass'n of Machinists & Aerospace Workers,* 859 F.2d 581, 584 (8th Cir.1988) (holding breach of the duty would be necessary for the plaintiff to succeed on a theory of "liability by way of acquiescence" in a Title VII claim[9]); *Nweke v. Prudential Ins. Co. of America,* 25 F.Supp.2d 203, 219 (S.D.N.Y.1998) (holding that a union may face liability under the ADA if it breaches its duty of

---

**9.** "The ADA incorporates the procedures and enforcement mechanisms of Title VII. Accordingly, guidance on the proper analysis of [Wood's] ADA … claim is found in Title VII cases." *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 16 (1st Cir.1997).

fair representation); *Schaefer v. Erie County Dept. of Soc. Servs.*, 82 F.Supp.2d 114, 118 (W.D.N.Y.2000) (union can be held liable under ADA where plaintiff shows union breached duty of fair representation and union's actions were motivated by discriminatory animus).

The Eighth Circuit has held that a union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith". *Baxter v. United Paperworkers Intern. Union, Local 7370*, 140 F.3d 745, 747 (8th Cir.1998); *see also Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir.1998) ("Mere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation."). A claim of breach of the duty of fair representation "does not survive in the absence of a breach of the collective bargaining contract". *Blount v. Local Union 25*, 984 F.2d 244, 249 (8th Cir.1993) (discussing breach of the duty of fair representation in the context of § 301 of the Labor Management Relations Act).

The Seventh Circuit has formulated a test that summarizes the aforementioned principles. To establish that the Union breached its duty of fair representation under this test, Wood must show: (1) that Crown violated the collective bargaining agreement; (2) the Union let the violation go unredressed, thereby breaching its duty of fair representation; and (3) that there was some indication of discriminatory animus motivating the Union's behavior. *Bugg v. Int'l Union of Allied Indus. Workers, Local 507 AFL–CIO*, 674 F.2d 595, 598 n. 5 (7th Cir.1982), *cert. denied*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); *Catley v. Graphic Communications Int'l Union, Local 277–M*, 982 F.Supp. 1332, 1340 (E.D.Wis.1997).

Wood argues that Crown breached the Agreement because it fired him because of his disability. However, even assuming, *arguendo*, that Crown's termination of Wood did constitute unlawful discrimination, the Agreement does not appear to contain a nondiscrimination clause. The Court is unable to identify any breach of the Agreement resulting from Wood's termination from Crown and notes that one of Wood's failure to accommodate arguments stems from Crown's *refusal* to violate the terms of the Agreement.

The Union points out that because Wood never communicated to the Union a well-founded claim that Crown breached the Agreement, his claim had no chance of success, and therefore the Union was not obligated to take Wood's claim to arbitration. *See Smith v. McDonnell Douglas Corp.*, 107 F.3d 605, 607 (8th Cir.1997) ("Establishing [that the union breached its duty of fair representation by failing to pursue that matter to arbitration] is an especially difficult task. Merely demonstrating the error of the union's decision or even that the decision was negligent is not enough."); *Blount v. Local Union 25*, 984 F.2d 244, 249 (8th Cir.1993) (holding as a matter of law that a union does not breach the duty of fair representation when it fails to prosecute an unmeritorious grievance); *Danylchuk v. Des Moines Register*, 128 F.3d 653, 653–54 (8th Cir.1997) (upholding district court decision that the union's decision not to arbitrate was not a breach of the duty of fair representation where it was not motivated by any animus against the employee); *Nweke*, 25 F.Supp.2d at 223 ("[A] union member does not have an absolute right to have her grievance taken to arbitration. Rather a union maintains discretion over its grievance machinery and the decision of whether to invoke arbitration.").

Accordingly, the Court finds no record support for the claim that the Union breached its duty of fair representation by

refusing to pursue Wood's grievance. Since Wood has failed to create a factual dispute as to whether the Union breached its duty of fair representation by allowing a breach of the Agreement by Crown to go unrepaired, the "discriminatory animus" prong of the *Bugg* test need not be addressed. *Nweke,* 25 F.Supp.2d at 223. In sum, even if Wood had established the underlying *prima facie* case of discrimination, the Union would be entitled to summary judgment. *See Baxter v. United Paperworkers Intern. Union, Local 7370,* 140 F.3d 745, 748 (8th Cir.1998) (granting summary judgment where the plaintiff failed to show that the union breached its duty of fair representation); *Buford v. Runyon,* 160 F.3d 1199, 1203 (8th Cir. 1998) (affirming grant of summary judgment on same grounds).

**Crown's Motion to Strike**

██ Defendant Crown requests that the court strike the arbitration decision, letter, and report of Dr. Robert Jones from the record for purposes of the summary judgment proceeding. Crown does not contest the authenticity or validity of these documents; instead, it bases its objection on Plaintiff's failure to certify the documents as required by Fed.R.Civ.P. 56(e). Plaintiff has expressed a willingness to depose the proper witnesses in order to ensure the validity of these documents. Under these circumstances, and in the context of the Court's decision on the motions for summary judgment, the Motion to Strike is denied.

**IV. CONCLUSION**

Defendants have shown that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on Plaintiff's claims against each of them. Accordingly, both Motions for Summary Judgment are **granted**. Crown has also moved to strike the workers' compensation arbitration decision and the letter and report of Dr. Robert C. Jones. This motion will be **denied**. The Clerk of Court shall enter judgment dismissing the complaints.

**IT IS SO ORDERED.**